**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| **v.** | **Criminal No.** 23-354 (FAB) |
| CÉSAR ALARCÓN-RODRÍGUEZ, | |
| **Defendant.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant César Alarcón-Rodríguez's ("defendant" or "Alarcón-Rodríguez") objections (Docket No. 55) to Magistrate Judge Giselle López-Soler's (the "magistrate judge") Report and Recommendation ("R&R"). (Docket No. 49.) For the following reasons, the court **ADOPTS** the R&R (Docket No. 49), **DENIES** the defendant's motion to suppress (Docket No. 25), and **GRANTS** the government's motion *in limine* (Docket No. 22).

**I.   Background**

After careful review, the Court **ADOPTS** the magistrate judge's findings of fact (Docket No. 49 at 2) drawn from the record and from credible evidence received at the evidentiary hearing, and summarizes the relevant parts as follows:

On November 2022, the defendant worked as a Mail Processing Clerk in the USPS at La Cerámica, Carolina, Puerto Rico. La Cerámica is a large United States Post Office ("USPS") building

where approximately 300 people work at a given time. Alarcón-Rodríguez worked with a machine that processes letters called a "Canceler." Letters were fed into the Canceler by other employees and the defendant received the letters that came out of the machine. He then would place the letters on dollies as they come out of the machine to be picked up by other employees. Defendant did not have an office space. There are no walls or doors separating the two Cancelers in the warehouse or separating the Cancelers from the rest of the warehouse. At any given time in a work shift, around 20 people worked near where the Cancelers are located. People came in and out of the general area where the defendant worked, including to access the punch clock and the coffee machine. There was another USPS employee that works in Alarcón-Rodríguez's workstation when he was not on duty. Other USPS employees, such as mail handlers and maintenance employees, sometimes would work on the same machine as the defendant during his shift.

USPS Office of Inspector General Agent Steven Martínez ("Agent Martínez") commenced an investigation concerning a complaint of ripped-open greeting cards in Florida. Upon scanning the bar codes in the ripped-open envelopes, Agent Martínez learned that the envelopes were processed in the Canceler machine operated by Alarcón-Rodríguez during his shift. Agent Martínez decided to

install surveillance cameras above both Canceler machines at La Cerámica to capture any illegal activity with respect to the mail. The video cameras recorded the defendant and other employees for approximately 39 days.

On May 10, 2023, Agent Martínez decided to interview Alarcón-Rodríguez. Agent Martínez and two other agents participated in the interview after identifying themselves and showing credentials. The interview took place at a large conference room; the door was left open through the duration of the interview. Alarcón-Rodríguez did not seem afraid, confused, or intimidated. He was presented with a form which contained his *Miranda* rights in Spanish. Agent Martínez read the form to the defendant and asked him whether he had any questions. Alarcón-Rodríguez then read the form, wrote his name and that of Agent Martínez in the top part of the form, placed his initials next to each of the numbered rights in the form, and signed and dated the form in the bottom part. During the interview, he was responsive and gave incriminating statements. He did not ask for an attorney to be present, nor did he inform Agent Martínez that he would remain silent. Alarcón-Rodríguez could have chosen to stop the interview and could have left the interview at any point.

## II.  Legal Standard

A district court may refer a pending motion to a magistrate judge for a report and recommendation.  See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b).  Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report.  Loc. Rule 72(d).  See 28 U.S.C. § 636(b)(1).  A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made."  Ramos-Echevarría v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review.  See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987).  In conducting its review, a court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636 (a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003).  Furthermore, the Court may accept those parts of

the report and recommendation to which the parties do not object. See Hernández-Mejías v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R. 2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F.Supp.2d 114, 125-126 (D.R.I. 2004)).

**III. Discussion**

Alarcón-Rodríguez makes three specific objections to the R&R. First, the defendant believes that the magistrate erred in concluding that he had no reasonable expectation of privacy in his workplace. (Docket No. 55 at 1.) Second, Alarcón-Rodríguez claims that the government lacked probable cause to surveille his workstation. Id. at 2. Third, the defendant believes the incriminating statements he made to law enforcement were the product of psychological coercion. Id. at 4-5.

**A.   Defendant's Expectation of Privacy in the Workplace**

Alarcón-Rodríguez has the burden of establishing that "his own Fourth Amendment rights were violated by the challenged search or seizure." United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009) (quoting Rakas v. Illinois, 439 U.S. 128, 131 (1978); see also United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). To accomplish this task, he must first prove that he had a legitimate expectation of privacy in "the place searched or the thing seized." United States v. Thornley, 707 F.2d 622, 624 (1st Cir. 1983) (citing United States v. Hershenow, 680 F.2d 847,

855 (1st Cir. 1982)).  The Supreme Court has set out a two-part test for analyzing the expectation of privacy question: first, the Court must consider whether the movant has exhibited a subjective expectation of privacy; and second, whether the subjective expectation is one that society recognizes as objectively reasonable.  Smith v. Maryland, 442 U.S. 735, 740 (1979); Vega-Rodríguez v. Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir. 1997).

Courts recognize that an individual might have a legitimate expectation of privacy in a work setting, but this expectation is not automatic.  See United States v. Mancini, 8 F.3d 104, 109 (1st Cir. 1993) ("under certain circumstances, a corporate officer or employee may assert a reasonable expectation of privacy in his/her corporate offices even if shared with others, and may have standing with respect to searches of corporate premises and records.")  To determine whether an individual has a reasonable expectation of privacy in the workplace, courts evaluate the specific facts of the case and consider relevant factors, such as whether the work area is used exclusively by the employee, the extent to which others have access to the area, the nature of the job, and the totality of the surrounding circumstances.  Id.; Vega-Rodríguez, 110 F.3d at 179-80.

Alarcón-Rodríguez disputes the magistrate judge's finding that he did not have a reasonable expectation of privacy due to the "open and undifferentiated" nature of his workspace. (Docket No. 49 at 5.) (quoting Vega-Rodríguez, 110 F.3d at 180). In support of his argument, the defendant references the USPS policies and regulation which he claims create an expectation of privacy in his workplace. (Docket No. 55 at 1.) Alarcón-Rodríguez then lists factors he believes support his claim, including the privacy that is generally respected when one handles other people's mail, the fact that he operated the machine alone while it was functioning, and his obligation to ensure the contents of the mail were not "improperly accessed or viewed by others." Id. at 2.

Alarcón-Rodríguez's objections to the R&R consists of essentially the same arguments that he included in his motion to suppress (Docket No. 25) which, for the same reason as outlined in the R&R, are unconvincing. On pages 6-7, the R&R thoroughly addressed Alarcón-Rodríguez's argument that USPS regulations support his expectation of privacy. (Docket No. 49.) The evidence also shows Alarcón-Rodríguez's workspace within a large warehouse, not separated by any wall, and involved multiple employees working on the same machine as the defendant sometimes even at the same time. (Docket No. 46 at 20-49.) Indeed, the defendant himself testified that approximately 20 people could be found in the

general vicinity of the machine he worked on during his shift. Id. These factors all weigh against a finding that Alarcón-Rodríguez had a reasonable expectation of privacy in the workplace. See Vega-Rodríguez, 110 F.3d at 180. The Court therefore agrees with the detailed reasoning laid out in the R&R and finds that the defendant does not have Fourth Amendment standing to challenge the video surveillance of his workstation. Because the defendant lacked a reasonable expectation of privacy in the workplace, the Court need not entertain his probable cause objection, because no constitutional violation occurred. Id., at 179.

**B.    Fifth Amendment Claim**

A suspect who has received *Miranda* warnings may waive his or her rights and consent to an interrogation. United States v. Carpentino, 948 F.3d 10, 20 (1st Cir. 2020) (citing Edwards v. Arizona, 451 U.S. 477, 484 (1981)). But, "[i]f the accused indicates that he wishes to remain silent, the interrogation must cease. If he requests counsel, the interrogation must cease until an attorney is present." Johnston v. Mitchell, 871 F.3d 52, 57 (1st Cir. 2017) (quoting Edwards, 451 U.S. at 482) (internal quotation marks and citation omitted). The burden is on the Government to prove a valid waiver by the preponderance of the evidence. United States v. Carpentino, 948 F.3d 10, 26 (1st Cir. 2020); Colorado v. Connelly, 479 U.S. 157, 168 (1986). In order

to demonstrate that a waiver of *Miranda* rights is valid, the government must show (1) that the relinquishment of rights was a free and deliberate choice, absent intimidation, coercion or deception, and (2) that the waiver was made with full awareness of the nature of the rights being abandoned. <u>Id.</u> The Court must examine the totality of the circumstances to ascertain whether a waiver of *Miranda* rights is valid. <u>Morán v. Burbine</u>, 475 U.S. 412, 420 (1986) (discussing <u>Miranda</u>, 384 U.S. at 468-470, 473-474).

Alarcón-Rodríguez objects to the R&R's finding and moves to suppress any incriminating statements made by him during his interview with Agent Martínez on May 10, 2023. (Docket Nos. 55, 25). The defendant alleges that his statements were the product of a coercive interview which involved threats and "psychological pressure" aimed at eliciting a confession. (Docket No. 55 at 5.) These allegations, however, are not supported by the record.

The magistrate judge, after a lengthy evidentiary hearing, found that Alarcón-Rodríguez "did not provide any testimony to substantiate his claims under *Miranda*." (Docket No. 49 at 9.) In addition, the magistrate judge found that Agent Martínez credibly established that the defendant was advised of, understood, and voluntarily agreed to waive his *Miranda* rights. <u>Id.</u> "Absent objective evidence that contradicts a witness's story

or a situation where the story itself is so internally inconsistent or implausible that no reasonable factfinder would credit it," there is no reason to undermine the magistrate judge's credibility determination. United States v. Colón-Torres, No. CR 20-175, 2023 WL 4883182 (D.P.R. Aug. 1, 2023) (Delgado-Colón, J.) (quoting United States v. Sierra-Ayala, 39 F.4th 1, 13 (1st Cir. 2022)). Furthermore, the record is clear that Alarcón-Rodríguez signed and initialed a waiver form containing unambiguous language of his *Miranda* rights. These facts, along with the magistrate judge's credibly determinations establish that the defendant freely and knowingly chose to waive his *Miranda* rights prior to the interview with Agent Martínez. See United States v. Guzmán-Batista, 783 F.3d 930, 937 (1st Cir. 2015) (noting that when a witness' credibly is challenged, courts are especially deferential to the magistrate judge's determination because they are best suited to "see [the witness] face-to-face or to appraise in person their demeanor and inflection.") (internal citations and quotation marks omitted). As the R&R correctly notes, "there is simply no evidence of coercion or involuntariness." United States v. Bezanson-Perkins, 390 F.3d 34, 39 (1st Cir. 2004) (only confessions procured by coercive official tactics should be excluded as involuntary).

## IV.   Conclusion

For the above reasons, the court **ADOPTS** the R&R (Docket No. 49), **DENIES** the defendant's motion to suppress (Docket No. 25), and **GRANTS** the government's motion *in limine* (Docket No. 22).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 25, 2024.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE