IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No.** 23-354 (FAB)

CÉSAR ALARCÓN-RODRÍGUEZ,

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant César Alarcón-Rodríguez ("Alarcón")'s motion for acquittal or new trial. (Docket No. 108.) The government opposes Alarcón's motion. (Docket No. 116.) For the following reasons, the motion for acquittal or new trial is **DENIED**.

I.  **Background**

In May 2022, the United States Postal Service ("USPS") Office of Inspector General ("USPS OIG") received a complaint from Cynthia Torres of Brandon, Florida, reporting that her mail appeared to have been ripped open and the cash inside stolen. (Docket No. 117 at pp. 4-5.) Through investigation, USPS OIG agents traced the tampered mail to a processing facility in Carolina, Puerto Rico. Id. at p. 5. After comparing when the envelopes passed through the facility with employee records, the agents narrowed down a

potential suspect, Alarcón, a mail processing clerk.  Id.  The agents sent "integrity tests" – envelopes deliberately filled with cash by the agents themselves – to be processed by Alarcón to see if any came back tampered with.  Id.  Of eight integrity-test envelopes sent, three came back ripped open, but no fingerprints were detected.  Id.

The agents proceeded to install covert cameras recording the shop floor where Alarcón worked.  Id. at p. 6.  These captured a series of videos which showed Alarcón ripping open mail.  Id.; Gov't Exhibits 27, 28, 29, 30, 31, 32, 33, 34.  In one video, recorded on December 13, 2022, Alarcón can be seen removing what appears to be a one hundred-dollar bill from an envelope and placing it in his pocket.  Id. at p. 7; Gov't Exhibit 34.  In January 2023, the agents interviewed Alarcón.  Id.  After waiving his Miranda[1] rights, Alarcón admitted that he occasionally opened mail, though he claimed they were already partially opened after being damaged by the processing machine.  Id.

On September 20, 2023, the grand jury returned an indictment of seven counts against Alarcón.  Counts one through six alleged violations of 18 U.S.C. § 1703, for unlawfully destroying, delaying, or opening mail.  (Docket No. 1 at p. 1-2.)  Count seven

---

[1] 384 U.S. 436 (1966).

alleged a violation of 18 U.S.C. § 1709, for stealing currency from mail. Id. at pp. 2-3. Each count was based on conduct that was captured on video by the agents on November 17, December 9, December 12, and December 13, 2022. (Docket No. 117 at p. 4.)

A jury trial was held from March 4 to March 6, 2025. See Docket Nos. 101, 102, 103, 104 (trial transcripts). The USPS OIG agents who investigated the case, Dale Tanner and Steven Martínez, testified for the government. Docket Nos. 101, 102, 103. Several USPS employees, including Alarcón's supervisor, Edgar Reyes, also testified for the government. See Docket Nos. 102, 103. The USPS employees generally testified about standard postal service practices for someone in Alarcón's role, including how employees were prohibited from opening or taking items from envelopes. Id. The jury was also shown the videos of Alarcón opening envelopes and, in one case, taking what appeared to be a one hundred-dollar bill. See Docket No. 102 at pp. 136-157; Gov't Exhibit Nos. 27, 28, 29, 30, 31, 32, 33, 34.

As for the defense, Alarcón elected not to testify. Instead, he called Samuel Hernández-Algarín, a representative of the American Postal Workers Union (the "Union"), as his only witness. See Docket No. 104. Mr. Hernández was prepared to testify that Alarcón's conduct was not out of line with standard postal employee practice. Id. at pp. 18-19. Mr. Hernández would also have

Criminal No. 23-354 (FAB)                                          4

testified that the Union had reviewed some of the videos of Alarcón
and concluded that his termination by USPS was not justified.  Id.
at pp. 17-18.  Last, Mr. Hernández would have testified that
Alarcón's conduct was in line with instructions provided to
employees by officials at USPS, forming the basis of an "entrapment
by estoppel" defense.  Id. at pp. 19-20.  The Court refused to
allow Mr. Hernández's testimony.  The Court based its refusal on
the potential for Mr. Hernández's testimony to usurp the
factfinding role of the jury by presenting the Union's
administrative conclusion on his culpability, and on Alarcón's
failure to properly notice his estoppel defense, as required by
Federal Rule of Criminal Procedure 12.3 ("Rule 12.3").

     After both sides rested, the jury returned guilty verdicts on
each of counts one through seven.  (Docket No. 92.)  With his
sentencing pending, Alarcón moves for the jury verdict to be set
aside and requests the Court to either issue a judgment of
acquittal or hold a new trial.  (Docket No. 108.)

## II.  Standard of Review

### A.  Rule 29 Motion

     This Court may set aside a jury's guilty verdict and
enter a judgment of acquittal on any offense for which the evidence
is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29.
In reviewing a motion for judgment of acquittal, courts consider

the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt." United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).

Rule 29 motions require the Court to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict." United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). The First Circuit Court of Appeals has called this sufficiency of evidence challenge "a tough sell," United States v. Polanco, 634 F.3d 39, 45 (1st Cir. 2011), observing that defendants seeking acquittal on this basis "face an uphill battle." United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010); accord United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (referring to the sufficiency of evidence burden as a "daunting hurdle[]") (internal quotation marks omitted).

While the sufficiency of the evidence is at the heart of the Rule 29 inquiry, deference to the jury's verdict controls the Court's analysis. To uphold the jury's guilty verdict, the Court need only determine that the conviction "finds support in a plausible rendition of the record." See, e.g., United States v.

Shaw, 670 F.3d 360, 362 (1st Cir. 2012).  Ultimately, Alarcón must establish that "the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt."  United States v. Vázquez-Soto, 939 F.3d 365, 371 (1st Cir. 2019) (emphasis in original).

**B.    Rule 33 Motion**

A trial court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "In general, a district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal."  United States v. Newbert, 532 F. Supp. 2d 200, 202 (D. Me. 2008) (citing United States v. Rothrock, 806 F.2d 318, 321 (1st Cir. 1986)).  "On the other hand, there are definite limits upon a district court's right to upset a jury verdict."  Id.  "The remedy of a new trial must be used sparingly and only where a miscarriage of justice would otherwise result."  United States v. Del Valle, 566 F.3d 31, 38 (1st Cir. 2009) (internal citation and quotation marks omitted).  "A non-constitutional evidentiary error is harmless (and, therefore, does not require a new trial) so long as it is highly probable that the error did not influence the verdict."  United States v. Piper, 298 F.3d 47, 57 (1st Cir. 2002).  And while "the [Sixth Amendment to the] Constitution guarantees

criminal defendants a meaningful opportunity to present a complete defense, . . . an accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." <u>United States v. Brown</u>, 669 F.3d 10, 19 (1st Cir. 2012) (internal citations and quotation marks omitted).

## III. Discussion

Alarcón raises three arguments for why he should be acquitted despite the jury verdict, or in the alternative, why the Court should set aside the verdict and hold a new trial. First, he argues that the evidence proffered by the government at trial was insufficient to establish the requisite intent for conviction under 18 U.S.C. §§ 1703 and 1709. Second, he argues that the Court allowed impermissible bad-act character evidence to be admitted which tainted the fairness of his trial. Third, he argues that the Court's refusal to allow Mr. Hernández's testimony deprived him of defenses and favorable evidence to which he was entitled to present.

### A. Sufficiency of the Evidence

Alarcón's first argument concerns the sufficiency of the government's evidence, particularly that the government did not present sufficient evidence to show that his actions were performed

with the intent required for convictions under 18 U.S.C. §§ 1703

and 1709.  The Court disagrees.

        For a defendant to be convicted under 18 U.S.C. § 1703,

the government must prove that he (1) was a USPS employee;

(2) committed an act that caused mail to be secreted, destroyed,

detained, delayed, or opened; and (3) acted unlawfully.  See 18

U.S.C. § 1703(a); United States v. Martínez-Garriga, Crim. No. 24-

090, 2025 U.S. Dist. LEXIS 21041, at *2 (D.P.R. Feb. 4, 2025)

(Besosa, J.)  With regards to intent, the government must show

only that the defendant knew his conduct was unauthorized – not

that he was motivated by an improper purpose.  See United States

v. Molyneux, No. 24-4002, 2024 U.S. App. LEXIS 30416, at *8-9 (10th

Cir. Dec. 3, 2024).  For 18 U.S.C. § 1709, the government must

show that (1) the defendant was a USPS employee; (2) the defendant

embezzled a package entrusted to him as a result of his employment;

and (3) the package was intended to be conveyed by the USPS.  See

18 U.S.C. § 1709; United States v. De Los Ángeles, No. 1:21-cr-

10358-IT, 2023 U.S. Dist. LEXIS 138303, at *5 (D. Mass. Aug. 8,

2023).  As with section 1703, the government need not show specific

intent to permanently deprive the owner of items taken from the

mail.  See United States v. Monday, 614 F.3d 983, 986 (9th Cir.

2010) ("It does not seem reasonable to assume that Congress

intended to make it a crime for a postal employee to open a piece

of mail with no specific intent, but to require specific intent to constitute a crime when such an employee removes the contents from a piece of mail.")

At trial, the government produced Alarcón's USPS employee badge (see Gov't Exhibit 35), testimony and identifications by witnesses who worked at USPS that Alarcón was a co-worker at the Carolina facility, documentary evidence tracing opened mail to Alarcón, and videos that could be fairly interpreted as showing him opening and stealing from mail entrusted to him. From this evidence, a reasonable juror could conclude that Alarcón was a USPS employee who opened mail in violation of section 1703. While Alarcón argues that there is no evidence that any of his conduct delayed or diverted the mail from its destination, the statute criminalizes unauthorized opening of mail as well, and there is ample evidence of him doing that. The December 13 video is also sufficient to show that he stole from the mail in violation of section 1709.

To show the requisite intent, the government's evidence included testimony from several USPS employees, each of whom confirmed their knowledge that both opening and stealing from mail was illegal and not part of Alarcón's duties. See, e.g., Docket No. 103 at pp. 43-49 (Janette Santana), pp. 70-76 (David López). From this evidence, it would be reasonable for a jury to infer

that Alarcón also knew that opening mail and stealing from mail
was illegal and not part of his duties.  The government also
submitted as evidence an employee intake form signed by Alarcón
where he acknowledged that both opening mail and stealing from
mail were illegal.  See Gov't Exhibits 7, 8.  This evidence goes
beyond mere "generalized testimony about institutional norms" – it
allows for a reasonable juror to infer that Alarcón knew that his
conduct was illegal, as required for a conviction under both
statutes.  Therefore, the government's evidence was sufficient to
establish Alarcón's mental state as required for convictions under
18 U.S.C. §§ 1703 and 1709.

Alarcón presents two additional arguments on sufficiency
of the evidence which concern the way in which the government
proved its case.  He argues that the government improperly relied
on his lack of adherence to institutional norms rather than showing
that he actually broke the law.  He also argues that the videos
were open to interpretation and that the government failed to back
up their interpretation with physical evidence.

Neither argument has any merit.  While Alarcón claims
that the government relied on institutional norms rather than on
evidence that he broke the law, that is not the case.  The
government's evidence went beyond establishing that Alarcón broke
norms – it shows that he violated clear rules prohibiting postal

employees from opening mail and stealing from mail.  See, e.g.,
Gov't Exhibits 7, 8; Docket No. 103 at p. 71.  As for the
subjectivity of the video, a reasonable juror could undoubtedly
find that they show Alarcón opening mail and stealing from mail.
Nothing more is required to uphold the verdict.

Therefore, Alarcón's Rule 29 motion on sufficiency of
the evidence is **DENIED**.

**B.    Character Evidence Objections**

Alarcón's next argument is that the government's case
relied on improper character evidence which tainted the fairness
of his trial, thus entitling him to a new trial.  He makes two
objections, first to the government's frequent reference to
institutional norms at the USPS, and second to their testimony
about the "Florida letters" (the tampered letters received by
Cynthia Torres).  Neither objection, however, merits the relief he
requests.

Federal Rule of Evidence 404(b) prohibits "[e]vidence of
any other crime, wrong, or act . . . to prove a person's character
in order to show that on a particular occasion the person acted in
accordance with the character."  Admission of prior bad-act
evidence is subject to a two-part test.  "First, [the Court] must
determine whether the evidence has 'special' relevance other than
establishing   propensity;   with   respect   to   this   inquiry,

Rule 404(b)'s list of purposes is not exhaustive." United States v. Landry, 631 F.3d 597, 602 (1st Cir. 2011). "Second, the court must consider whether Rule 403 requires exclusion of the evidence because the danger of unfair prejudice substantially outweighs the probative value." Id. Naturally, the prior "bad acts" must have been performed by the defendant, and do not include conduct for which the defendant is being charged in the current case.

Alarcón describes the government witness's testimony that his "conduct deviated from USPS moral or professional expectations" as improper bad-act character evidence. His failure to comply with institutional norms, however, is not evidence of another crime, wrong, or act that he committed used to show propensity for deceit. The instances where the government witnesses testified that he departed from USPS practice were the same instances of wrongful conduct for which the government sought to convict him. Rather than trying to show a penchant for dishonesty inherent in his character, the government was merely arguing that Alarcón's conduct violated sections 1703 and 1709. Therefore, Alarcón's first character evidence objection is meritless.

Alarcón also argues that the government's testimony about the Florida letters was impermissibly used to argue that he had a propensity for tampering with mail. The Court disagrees.

Criminal No. 23-354 (FAB)                                          13

　　　　　Alarcón was not directly charged with anything related to the Florida letters – instead, this evidence was used to explain how the government investigation identified him as a possible suspect for mail tampering and theft.  The Court considers it more apt to characterize the testimony about the Florida letters as "overview testimony."  Overview testimony can be permitted if "helpful to provide background information and to explain how and why agents became involved with a particular defendant in the first place."  United States v. Etienne, 772 F.3d 907, 914 (1st Cir. 2014).  While some risk of the jury drawing an improper propensity inference was presented by discussing the Florida letters, any prejudicial effect would not substantially outweigh its relevance in explaining the investigation to the jury.  The government's testimony on the Florida letters focused on how they were used as a starting point for the investigation; Alarcón's name was not even brought up until later.  See Docket No. 101 at pp. 24-89 (testimony of Shirley Torres, Cynthia Torres, and Dale Tanner, during which Alarcón's name is not mentioned).  By explaining the government's investigation to the jury and showing how Alarcón was not singled out for investigation unfairly, this testimony was proper overview evidence that did not unfairly prejudice Alarcón's defense.  Therefore, discussion of the Florida letters was not an evidentiary error compelling a new trial.

**C.    Exclusion of Samuel Hernández Testimony**

Last, Alarcón argues that he is owed a new trial because the Court improperly excluded testimony from Mr. Hernández, the Union representative. Alarcón argues that he was entitled to present a defense of entrapment by estoppel through Mr. Hernández's testimony, and that the Court's failure to allow this testimony violated his Sixth Amendment right to present a complete defense. See Docket No. 108 at pp. 9-11.

"A defense of entrapment by estoppel requires the defendant to show that he had been told by a government official that his behavior was legal and that he reasonably relied on that advice." United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006) (citing United States v. Bunnell, 280 F.3d 46, 49 (1st Cir. 2002)). Under Rule 12.3, defendants are required to provide notice to the government if they intend to utilize a "public authority" defense, which is very similar to an entrapment by estoppel defense. Due to this similarity, courts generally extend Rule 12.3's notice requirement to entrapment by estoppel. See, e.g., United States v. Hilton, Crim. No. 97-78-P-C, 2000 U.S. Dist. LEXIS 9220, at *11 (D. Me. Jun. 30, 2000) (rev'd on other grounds, 257 F.3d 50 (1st Cir. 2001)) (Rule 12.3's notice requirement applies to both entrapment by estoppel and public authority, but permitting a Defendant to raise the former defense because he properly noticed

the latter); United States v. Putman, No. 18-cr-20133, 2019 U.S.
Dist. LEXIS 84689, at *18 (E.D. Mich. May 20, 2019) ("Although
Rule 12.3 is not expressly applicable to an entrapment-by-estoppel
defense, the Sixth Circuit has extended the rule to that defense");
United States v. Douglas, No. 3:22-cr-00036-TSL-FKB, 2024 U.S.
Dist. LEXIS 9864, at *5-6, n. 1 (S.D. Miss. Jan. 19, 2024) ("While
Rule 12.3 does not by its terms require notice of an entrapment by
estoppel defense but rather refers only to the defense of public
authority, courts generally have held that due to the similarity
of the two defenses, the rule also requires notice of an entrapment
by estoppel defense").  The notice must be filed "within the time
provided for filing a pretrial motion, or at any later time the
court sets," and must contain information about "the law
enforcement agency or federal intelligence agency involved; [] the
agency member on whose behalf the defendant claims to have acted;
and [] the time during which the defendant claims to have acted
with public authority."  Rule 12.3(a)(2).

        The Court finds that Alarcón's effort to establish an
entrapment by estoppel defense was correctly excluded at trial.
Alarcón concedes that the Rule 12.3 notice requirement applies to
his entrapment by estoppel defense, claiming that his defense "was
properly noticed in the amended jury instruction filing (Docket
87)."  (Docket 108 at p. 9.)  His amended jury instruction filing,

however, was not submitted until March 7, 2025 – the final day of trial.  See Docket Nos. 87, 89.  This was well after the pretrial motion deadline.  See Docket No. 11.  And even so, the amended jury instructions do not provide key content required for proper notification, namely, the identities of the officials who made the statements relied on by the defendant.  See Rule 12.3(a)(2) (outlining contents of the notice).  Therefore, Alarcón failed to properly notice his entrapment by estoppel defense, and its exclusion was warranted.

In any case, Alarcón's entrapment by estoppel defense was highly implausible.  To make out the defense, Mr. Hernández would have had to testify that Alarcón was instructed by USPS officials to open mail and to steal from mail.  Since the entrapment defense requires Alarcón to have relied on these instructions when committing his unlawful acts, the instructions would have had to have occurred before the conduct alleged in the complaint.  That any such instruction was ever given is extremely farfetched, particularly when everyone at USPS was aware it was illegal, including Alarcón.  Mr. Hernández's testimony was much more likely to have confused the jury or wasted time, and was correctly excluded during trial.

Criminal No. 23-354 (FAB)                                              17

Therefore, the exclusion of Mr. Hernández's testimony does not necessitate holding a new trial, and Alarcón's Rule 33 motion is accordingly **DENIED.**

**IV. CONCLUSION**

For the reasons set forth above, Alarcón's motion for acquittal or new trial is **DENIED.** (Docket No. 108.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 1, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE